FRANCISCA SALINAS DE LEON V. MANUEL TREVINO & BRO.

1. EXCLUSION OF EVIDENCE ON DEFECTIVE PLEADING.—Where competent evidence, tending to establish the truth of the petition or answer, has been excluded by the court below upon an untenable objection made to it by the other party, but in a case where no ground of action or of defense is presented by the pleadings, and it is obvious from the nature of the case that the defect could not be cured or avoided by amendment, and, had the desired evidence been admitted, that the opposite party would have been entitled to a judgment *non obstanti veredicto*, the error in excluding the testimony is abstract and immaterial, furnishing no ground for reversal on appeal.

2. ILLEGAL CONTRACT.—Although a contract may be illegal, it does not follow that it is illegal or immoral for the parties to it, after its completion, to fairly settle and adjust the profits and losses which have resulted from it. The vice of the contract does not enter into such settlement.

3. SAME.—Parties in Brownsville, in 1864, made a partnership for purpose of shipping merchandise from Matamoras, in Mexico, to Texas,

with a view to obtaining cotton. In 1866, the parties on settlement adjusted their accounts, one executing his notes to the others: *Held*, That the vice of illegality would not follow into the notes, nor be a defense to an action thereon.

APPEAL from Cameron. Tried below before the Hon. Edward Daugherty.

July 17, 1871, Manuel Trevino & Bro. sued Manuel Leon De Leon, of Camargo, Mexico, on four promissory notes of date October 8, 1866, executed by defendant, each note reciting that it was "for equal value received in money and merchandise to my entire satisfaction," the notes amounting in the aggregate, with interest, to $12,977.07.

An attachment was levied. Subsequently personal service was had. Pending the suit, May, 1872, before answer, defendant died.

November 25, 1874, Francisca Salinas De Leon, widow and administratrix of deceased defendant, was admitted as defendant; and she pleaded a general denial, and, specially, "that at the city of Brownsville, Texas, on 12th of March, 1864, the plaintiffs made an agreement with the said Manuel Leon De Leon in relation to a large quantity of dry goods which plaintiffs then had in their store, in Matamoras, Mexico, of value of $13,734.27, whereby the said defendant was to take charge of said merchandise, pass it into Texas, and there dispose of it for the joint and equal benefit of himself and said plaintiffs; that it was well understood between the contracting parties that the said goods were to be exchanged for or invested in cotton in Texas, and it shipped to Matamoras, in Mexico, for joint account of both parties.

"That in pursuance to the agreement, the said defendant took charge of the said goods at Matamoras, crossed them into Texas, exchanged them for, or invested proceeds of in cotton, which was shipped to plaintiffs at Matamoras; that these transactions were had during the war of the rebellion, and were in aid of the 'Confederate States,' and were contrary to, and in evasion of, the laws of the United States;

that the notes sued on were given by defendant in settlement of an assumed balance on account, arising out of the said transaction, and being based on an unlawful contract, and for the fruits of a contract to violate the law of the land, have no validity or force as a cause of action."

A jury was waived. On the trial, plaintiffs read in evidence the four promissory notes, and the defendant offered in evidence the written agreement set up in the plea, after proving the signatures of the parties. The plaintiffs objected thereto, because being attested by two subscribing witnesses, and they nor either had been called. The objection was sustained, and the document excluded.

Testimony of a witness, Tristan Rodriguez, with letters of plaintiffs, were also offered to sustain the further allegations in the plea, and were excluded as irrelevant, the original contract having been excluded.

Over objection, defendant read in evidence a document of date October 8, 1866, signed by plaintiffs, as follows (translated):

"Be it known by the present, that, with our consent and conformity, we have settled the accounts of the business of the expedition to Laredo and the interior of the State of Texas, made on our joint and equal account in profits and losses; and in the liquidation of the portion of losses and merchandise taken by Manuel L. De Leon, he remains indebted to us in the sum of $10,381.73, which he has offered to pay us as follows." (Following is a description of four notes of same date, and corresponding in other respects with those sued on.)

The court rendered judgment for the amount due on the notes for plaintiffs, and the defendant appealed.

*F. E. McManus* and *Ballinger, Jack & Mott,* for appellant, cited 1 Greenl. Ev., secs. 63, 254, 573b, and note, 577; Crozier *et al. v.* Kirker, 4 Tex., 252; Burnley *v.* Rice, 18 Tex., 481; Arrington *v.* Sneed, 18 Tex., 140.

*Wm. H. Russell*, for appellees.

Moore, Associate Justice.—The only material question presented by the assignment of errors in this case, relates to the exclusion of the evidence offered on the trial in the court below, to prove that the notes, which are the foundation of the action, were given by the appellant's intestate, Manuel Leon De Leon, to appellees, on a settlement and liquidation of a business enterprise, in which said De Leon and appellees, Trevino & Bro., had been jointly engaged, during the war between the United States and the Confederate States, for introducing merchandise from Matamoras, Mexico, into Texas, and its sale or conversion here into cotton, to be transported to Mexico, and which said enterprise, it is alleged, was contrary to public policy and in violation of the law of the United States, &c.

Where competent evidence, tending to establish the truth of the petition or answer, has been excluded by the court below upon an untenable objection made to it by the other party, it is ordinarily no answer to an assignment of error to the ruling of the court, to show that the petition or answer under which the evidence was offered is defective. But where no ground of action or defense whatever is presented by the pleadings, and it is obvious from the nature of the case that the defect could not be cured or avoided by an amendment, and, had the desired evidence been admitted, that the opposite party would have been entitled to a judgment *non obstanti veredicto*, the error in excluding the testimony is abstract and immaterial, and furnishes no sufficient ground for the reversal of the judgment. Such, we think, is the character of the defense relied upon and sought to be established by appellant in this case.

If it should be conceded, (which, however, I can by no means do,) that the contract between appellees and De Leon for the introduction, during the war between the United States and the Confederate States, of merchandise from Matamoras

into Texas, and the purchase and exportation of cotton from Texas to Mexico, without passing such merchandise and cotton through the custom-house of the United States, or a compliance in any way whatever with its revenue laws, or the rules and regulations to which all persons subject to its authority were required to conform, pending hostilities, in all communication or intercourse with the inhabitants of or others within the Confederate lines, should be held to be in violation of the laws of the United States and against public policy, and that neither party to such contract could have obtained the aid of the court for its enforcement, or could maintain an action for a breach of any of its conditions or stipulations by the other, it does not tend to support appellant's defense, and is of no moment in correctly determining the present case.

This action is not founded upon the alleged illegal contract, nor was it brought to enforce any of its stipulations or conditions. The illegal enterprise, if it was illegal, in which De Leon and appellees were engaged, and all the matters connected with it, were voluntarily settled and adjusted by them. True, the notes upon which the suit is brought were given by De Leon in such settlement. But if a contract is illegal, certainly it does not follow that it is illegal or immoral for the parties, after its completion, to fairly settle and adjust the profits and losses which have resulted from it. The vice in the contract does not enter into the settlement so that all contracts and undertakings based upon, or growing out of, the settlement, confer no rights which the courts will respect or enforce. By her answer, appellant sought to be relieved against an executed contract, upon the ground that her intestate had been engaged with appellees in an illegal enterprise. But she is not entitled to relief upon such ground. If the notes sued upon had been given to carry on the illegal enterprise, instead of in settlement of it, the taint of the contract would have attached to the notes, and appellees could not maintain an action upon them. But the answer merely shows, that,

by reason of the illegal character of the enterprise in which the parties had been engaged, appellant's intestate could not have been forced to an accounting with appellees, or to pay or give his notes for the amount found to be due from him to appellees on such accounting. This, however, is no reason why an action may not be maintained on notes given for the amount found to be due on a voluntary settlement of the illegal partnership enterprise. And it has often been, in effect, so held in this as well as other courts.

In the case of Brooks *v.* Martin, on a bill in equity, by one partner against the other, to set aside a contract of sale of his interest in the partnership venture, the Supreme Court of the United States held, that "after a partnership contract confessedly against public policy has been carried out, and money contributed by one of the parties has passed into other forms, the results of the contemplated operation completed, a partner in whose hands the profits are cannot refuse to account for and divide them, on the ground of the illegal character of the original contract." (2 Wall., 70.) Now, surely if the court will lend its aid to compel an accounting, and enforce the payment of the amount found to be due by one partner to the other, it cannot be that it should interpose to relieve one of the partners from a contract resulting from his voluntary accounting, on the ground of the illegality of the original partnership enterprise, which, after completion, had been thus voluntarily settled and adjusted.

In the case of The Planters' Bank *v.* The Union Bank, 16 Wall., 483, the court again says: "Nor should the court have charged, that, in the circumstances of this case, no action would lie for the proceeds of the sales of Confederate bonds which had been sent by the plaintiffs to the defendants for sale, and which had been sold by them, though the proceeds had been carried to the credit of the plaintiffs, and made a part of the account. It may be that no action would lie against a purchaser of the bonds, or against the defendants, on any engagement made by them to sell. Such a contract would have

been illegal. But when the illegal transaction has been consummated; when no court has been called upon to give aid to it; when the proceeds of the sale have been actually received, and received in that which the law recognized as having had value; and when they have been carried to the credit of the plaintiffs, the case is different. The court is then not asked to enforce an illegal contract. The plaintiffs do not require the aid of any illegal transaction to establish their case."

So in Sharp v. Taylor, 2 Phillips Ch., 801, where a bill was filed to recover a moiety of freight-money, the whole of which had come into the hands of one of the joint owners of the vessel. The defense was, that the trade in which the vessel had been engaged, and in which the freight had been earned, was illegal, and in violation of the navigation laws. But the Chancellor, Lord Cottingham, said: " Can one of two partners possess himself of the property of the firm, and be permitted to retain it, if he can show that in realizing it some provision in some act of Parliament has been violated? The answer is, that the transaction alleged to be illegal is completed and closed, and will not be in any manner affected by what the court is asked to do as between the parties."

Is this not, we ask, equally true in this case? The partnership enterprise in which appellees and De Leon had been engaged had been fully completed before they had voluntarily adjusted, as between themselves, its results. If the enterprise had been successful, and De Leon, who had been the active partner, had been found to be indebted to appellees for profits, under the authority of cases to which we have referred, an action might have been maintained against him by appellees for their share of them. By the terms of the partnership, appellees were to furnish the goods, and De Leon was merely to contribute his personal services, and the profits and losses were to be mutually divided. Does it make any difference, that the notes sued on were given in liquidation of the portion of losses and merchandise which on settlement De Leon was found to be due appellees, instead of their being given for

profits? If there had been no settlement of the copartnership affairs; if there had been no new contract, it may be that appellees could not maintain an action for a contribution to liquidate the losses incurred, or for the recovery of their half of them, if they had paid them all; though the cases to which we will refer seem to imply that they might, and certainly hold that they could have recovered if such losses had been paid at his request or express consent. In such case, it might be said that the action was upon the original illegal contract. But by the voluntary settlement and adjustment of the partnership affairs, and the giving of the notes sued upon, the illegal transaction was completed and closed, and an entirely new undertaking entered into. The express undertaking by De Leon to pay appellees for the losses which they had incurred, which may represent liabilities of the partnership for which they were bound or have assumed to discharge at request of De Leon, would seem to be supported by as adequate consideration as an implied promise to pay profits resulting from a similar partnership transaction.

In the case of Faikney v. Reynous, 4 Burr., 2069, where two persons were jointly concerned in an illegal stock-jobbing business, which resulted in a loss, one of them paid the entire loss, and took a security from the other for his share. The security was held to be valid as a new contract, uninfected by the original transaction. And in Petrie v. Hannay, 3 Term R., 418, one partner, who had paid the whole loss at the instance of the other, was held entitled to the recovery of one-half of the amount so paid.

These cases, it is true, have been questioned, but nevertheless we find them referred to with approval, as we state them, by the Supreme Court of the United States, and cited as authority by this court. (11 Wheat., 258; 17 How., 238; 2 Wall., 70; 18 Tex., 200; 23 Tex., 308.)

And in a case where plaintiff and defendant, dealing faro in partnership, became indebted by losses to other parties, and the plaintiff, in consideration that the defendant had

paid and assumed payment of these losses, gave the defendant his note for his share of them, this court held that the consideration of the note was not unlawful, and that the defendant was entitled to a judgment upon it. (*Boggess v. Lilly*, 18 Tex., 200.)

These cases, we think, clearly show that a contract or undertaking to pay either profits or losses incurred in an illegal enterprise, cannot be impeached by showing that the partnership enterprise in which such profits or losses accrued was illegal. That they are collateral to, and not a part of, the illegal contract which had been by voluntary settlement fully completed and ended before the contract or undertaking upon which the suit is brought was entered into. Such contracts are, therefore, regarded by the courts as standing upon an altogether different footing from a renewal of, or a new security given for, an original illegal contract.

There is no error in the judgment of which appellant can complain, and it is affirmed.

AFFIRMED.