## WILLIAM WIGGINS v. PETER BISSO.

### No. 695. Decided October 31, 1898.

**1. Pleading.**

A plea distinctly alleging that a partnership in which an accounting was sought was formed for the purpose of procuring an unlawful contract out of which the alleged profits arose, is not subject to demurrer because the contract appears to bear a date prior to that of the creation of the partnership. (Pp. 221, 222.)

**2. Partnership—Action for Profits of Illegal Contract.**

In an action between partners for recovery of alleged profits of the business, an answer which asserted the illegality of the partnership (as that it was formed to carry out restrictions in trade in violation of the anti-trust law) presented a defense to the action. (Pp. 222, 223.)

**3. Same—Cases Discussed.**

Read v. Smith, 60 Texas, 379, and other cases followed, and Pfeuffer v. Maltby, 54 Texas, 454; DeLeon v. Trevino, 49 Texas, 89, and Brooks v. Martin, 2 Wall., 70, distinguished. (Pp. 222-225.)

ERROR to the Court of Civil Appeals for the Fifth District, in an appeal from Navarro County.

Exceptions to defendant Wiggins' answer setting up the illegal nature of the partnership for the profits of which plaintiff Bisso sought an accounting having been sustained, Wiggins appealed from a judgment recovered by plaintiff, and on the affirmance thereof obtained writ of error.

*Stone & Lee* and *R. S. Neblett*, for plaintiff in error.—A contract for the sale of beer to a dealer at certain stipulated prices to be maintained throughout, the manufacturer obligating himself not to sell beer to any other person in the town where the dealer is to operate, and the dealer obligating himself not to buy from any other person except said manufacturer, is violative of the anti-trust laws of the State and void. Brewing Co. v. Templeman, 38 S. W. Rep., 27; Fuqua v. Brewing Co., 38 S. W Rep., 29; Read v. Smith, 60 Texas, 379; Seeligson v. Lewis, 65 Texas, 216; Wegner Bros. v. Biering & Co., 65 Texas, 510; Reed v. Brewer, 37 S. W. Rep., 418; Bank and Trust Co. v. Duncan, 36 S. W. Rep., 887; Oliphant v. Markham, 79 Texas, 543; Oil Co. v. Adoue, 83 Texas, 650.

A contract between two or more persons wherein each agrees to contribute of his capital, labor, or skill to forward a joint enterprise prohibited by law or contrary to public policy, or wherein they agree to procure an unlawful contract with a stranger and to conduct a joint business thereunder as partners, each contributing thereto of his capital or labor, and sharing in named proportions the profits and losses of such business, is void. And in a suit by one of the partners engaged in such business against the other for a settlement of the partnership account and a recovery of one-half of the profits of such business, an answer setting up such contract and further alleging that there has been no settlement between the partners, nor between the partnership and the stranger

with whom the partnership is dealing, and alleging further that defendant has never promised plaintiff to pay him anything on said contract or out of the receipts of said business, sets up a good, legal and valid defense, and is not obnoxious to a general demurrer. Read v. Smith, 60 Texas, 379; Bishop v. Honey, 34 Texas, 252; Hunstock v. Palmer, 23 S. W. Rep., 294; Oliphant v. Markham, 79 Texas, 543; O'Bryan v. Fitzpatrick, 3 S. W. Rep., 527; Gibbs v. Gas Co., 130 U. S., 396; Railway v. Railway, 9 Willson C. C., 660.

*Simpkins & Mays*, for defendant in error.—The illegal enterprise being finished and the collateral copartnership being ended, and only profits remaining to be divided, public policy does not require that one of the partners should be permitted to keep the spoils. Patty-Joiner Co. v. Bank, 41 S. W. Rep., 177; De Leon v. Trevino, 49 Texas, 93; Brooks v. Martin, 2 Wall., 70; Pfeuffer v. Maltby, 54 Texas, 461; Wegner v. Biering & Co., 65 Texas, 510; Lewis v. Alexander, 51 Texas, 578; McBlair v. Gibbes, 17 How., 239; Bank v. Bank, 16 Wall., 500; Greenhood, Public Policy, 107, 108; Morawetz, Priv. Corp., 2 ed., art. 724; 20 Fed. Rep., 170; Daniels v. Barney, 22 Ind., 207; Peters v. Grim, 149 Pa. St., 163; 5 Fed. Rep., 584; 133 U. S., 434, 467; 89 Texas, 401; State v. Railway, 34 Md., 344-365; Bousfield v. Wilson, 16 Mees. & Welb., 185; Haacke v. Knights, etc., 76 Md., 429.

Where a plaintiff can show a cause of action without being obliged to prove his own illegal act, even though such illegal act may incidentally appear, and may be important as explanatory of other facts in the case, he may recover. Beer v. Landman, 31 S. W. Rep., 807, citing the rule laid down in Frost v. Plumb, 40 Conn., 112; Patty-Joiner Co. v. Bank, 41 S. W. Rep., 177; Oliphant v. Markham, 79 Texas, 544, 82 Texas, 221; Floyd v. Paterson, 72 Texas, 205.

Where it is shown that one partner holds all the profits of a business in his possession, and refuses to account for the same on demand, it is unnecessary that there should be an express promise to pay by the partner so holding to enable the other to maintain suit. Patty-Joiner Co. v. Bank, 41 S. W. Rep., 179; Bank v. Bank, 16 Wall., 500; Brooks v. Martin, 2 Wall., 70; De Leon v. Trevino, 49 Texas, 92; Lewis v. Alexander, 51 Texas, 579.

BROWN, Associate Justice.—Peter Bisso sued the plaintiff in error in the District Court of Navarro County, alleging in substance that on May 1, 1892, the plaintiff and the defendant entered into a partnership to continue one year from that date, under the style of William Wiggins, by which they agreed each to put into the partnership certain named property and services and to carry on in the city of Corsicana the sale of ice and beer. The petition alleged that all profits derived from the said business, amounting to $7980, were to be divided equally between the said partners, all of which went into the possession of the said William Wiggins, who likewise had possession of all the invoices of the beer and

ice shipped to and sold by the said firm, and of its books; that William Wiggins failed and refused to account to the plaintiff for any of the profits of the business; and prayed that an accounting might be had of the said partnership business and for judgment for one-half thereof.

The defendant below filed a general demurrer, a general denial, and a special answer, in substance as follows: That no such partnership ever existed between him and plaintiff as is alleged in plaintiff's petition, but that on or about the 20th day of April, A. D. 1892, plaintiff and defendant by verbal agreement entered into a partnership contract by which it was mutually agreed that they should sell ice and beer in Corsicana, Texas, and if it be true that the said partnership accumulated any profits in that business, such profits were accumulated under an illegal and unlawful undertaking by which the defendant entered into a contract in writing with the St. Louis Brewing Association whereby the said partnership and the brewing association combined their skill, capital, and labor, and acts to create and carry out restrictions in trade, to increase the price of beer, and to prevent competition in transportation, sale, and purchase of beer, etc., making sufficient allegations to bring the contract between the partnership and the brewing association within the provisions of the anti-trust law of the State of Texas, approved March 30, 1889. The plaintiff demurred to this special answer and the trial court sustained the demurrer, whereupon the defendant, Wiggins, filed a trial amendment in which he reiterated in substance the allegations of the former plea, with the additional allegation that the partnership entered into between the plaintiff and himself was so formed for the express and sole purpose of obtaining, making, and carrying out the contract with the St. Louis Brewing Association whereby the said partnership and the said brewing association agreed to do the things embraced in the said contract, and that the said partnership did carry on the business under the said illegal contract made with the brewing association, and that all the profits, if any, of the said business, were made out of the business carried on and conducted under and by virtue of the said illegal contract. The trial amendment referred to the contract with the brewing association, which was attached, dated on the 5th day of April, 1892. The plaintiff below filed a general demurrer to this trial amendment, which was sustained by the court. A trial of the case was had in the District Court, which resulted in a verdict and judgment for the defendant in error, which was affirmed by the Court of Civil Appeals.

For the defendant in error it is claimed that the allegations of the defendant's special plea show that the contract of partnership was not entered into for the purpose of securing the unlawful agreement for the sale of beer made between Wiggins and the brewing association, because it appears from the answer that the contract of partnership was made on the 20th day of April, 1892, and the agreement for the sale of beer, which is attached to the answer, bears date April 5, 1892, showing that the unlawful agreement had been entered into before the partnership was formed. It is distinctly alleged in the answer that the partnership was

formed for the sole purpose of procuring the contract which was made between Wiggins and the brewing association, and that the said contract was actually made on behalf of the partnership, composed of Wiggins and Bisso, in the name of Wiggins alone by the agreement of the partners. In testing the sufficiency of this answer by general demurrer, it was the duty of the court to indulge in favor of the plea every reasonable intendment arising upon the pleading. Wynne v. Bank, 82 Texas, 383. There are many ways in which the discrepancy between the dates and allegations could be accounted for, and, although the plea may be somewhat uncertain, the positive allegations contained in it can not be overthrown by the fact that the dates may conflict with the facts alleged. The allegations must be taken in this investigation as showing that the copartnership was formed for the purpose of procuring the unlawful agreement.

If the facts alleged by the defendant in his answer be true, Bisso and Wiggins entered into the partnership agreement for the purpose of violating the laws of the State of Texas by procuring a contract between themselves and the brewing association, which in its terms was a distinct violation of the anti-trust law of this State, approved March 30, 1889. The parties agreed to enter upon a business the conduct of which involved daily violation and disregard of the laws of the State, out of which violation of the law the profit sued for accrued. Bisso can not recover in this case without proving the contract of partnership between himself and Wiggins, and must recover, if at all, according to its terms. To give relief to Bisso, the court must examine each of the transactions which the partnership had with other people under the unlawful agreement entered into with the brewing company, and thus the court would be engaged in the examination of the unlawful acts of these parties in order to do equity between them. Under the circumstances alleged in the answer, the courts of this State will not investigate such transactions, but will leave the parties as they find them. Read v. Smith, 60 Texas, 379; Wills v. Abbey, 27 Texas, 203; Reed v. Brewer, 90 Texas, 144; Beer v. Landman, 88 Texas, 450; Bartle v. Nutt, 4 Pet., 185; Todd v. Rafferty, 30 N. J. Eq., 260; Gregory v. Wilson, 36 N. J. Law, 315.

In the case of Read v. Smith, which is directly in line with the case now before the court, Judge Stayton said: "It has been often said that the test whether a cause of action connected with an illegal transaction can be enforced at law is whether the plaintiff requires any aid from the illegal transaction to maintain his cause. While this is a correct rule, it may not go far enough to meet all the cases which may arise upon which, under well settled principles, the courts would refuse relief upon the ground of the illegality of the transaction. This rule, however, goes far enough to include this case. The plaintiff claims the value of one-half of the scrip. Why? Because while sheriff he made the agreement set out and in pursuance therewith furnished the money with which the paper was bought. Thus is he compelled to set out the agreement, illegal as it is shown to be by the answer, as the sole basis of his right.

"The object and purpose of the contemplated partnership was to do indirectly through Wood, for the benefit of both, that which the law prohibited Smith to do diretly, and it had no single purpose legal in its character.

"In such a case as is made by the pleading, we believe that the law forbids relief to either party in the way of forcing an account and settlement between them, they never having made a settlement themselves."

In this case, as in that, relief must be given by virtue of and in accordance with the partnership agreement, which was itself illegal. Bisso entered into this agreement in order to do directly in the name of Wiggins what the law forbade either of them to do in conjunction with another or with others. The facts of the two cases are so nearly identical that a proposition of law applicable to the one can not be inapplicable to the other.

In the case of Read v. Brewer, cited above, the plaintiff sued to recover of the defendant upon a note given for furniture to be used by her in a house of prostitution. The court found that the person who sold the furniture knew that it would be used in maintaining that house, and intended by the sale to aid the woman in carrying on the immoral and unlawful business. Upon this state of facts this court held that the note upon which suit was brought was illegal and void and that the plaintiff could not recover. The reason given was that the plaintiff could not recover except upon the void contract.

On behalf of the defendant in error, counsel cited many authorities, which we have examined, but find none that we think it necessary to comment upon except Pfeuffer v. Maltby, 54 Texas, 454; De Leon v. Trevino, 49 Texas, 89; and Brooks v. Martin, 2 Wallace, 70. The first case mentioned involved the right of a partner to recover against his copartner for profits accruing in what was alleged to be an illegal partnership. The defendant alleged in substance that the partnership was formed for the purpose of furnishing tinware to the Confederate States government in lieu of military services required of the partners by that government, and that the tinware not so used had been sold for confederate money, which had been invested by the defendant partner in cotton, shipped to Mexico, and sold for specie. Plaintiff demurred to this answer, which demurrer was overruled, and, upon trial, judgment was entered against the plaintiff. The case was referred to the Commission of Appeals; the opinion was written by Judge A. S. Walker and approved by the Supreme Court. Judge Walker states the question thus: "Whether the contract of partnership at the time it was formed and entered upon by the parties was illegal and void as against public policy, is not necessarily the controlling question; but the true inquiry is, whether a party to that contract is liable or not, in an action against him, brought by his former partner to recover from him his share of the proceeds of the partnership." The judge then proceeded to state what was decided in the case of De Leon v. Trevino and to quote largely from that case, principally what Judge Moore had himself quoted from the case of Brooks v. Martin; but

does not announce in that part of the opinion what application he made of the quotations from De Leon v. Trevino to the facts of the case before the court. He then proceeded to discuss a different question from that stated in the first part of the opinion, after which he concludes the opinion thus: "We rest our conclusion in the case before us, however, upon the question first discussed. It is not necessary to decide beyond the point which is there involved." We understand from the opinion that the judge intended to decide that, notwithstanding the contract of partnership might be illegal, the plaintiff could recover of the defendant under the facts of that case. He does not notice that the answer of the defendant alleged that the confederate money received in the course of the business had been invested in cotton and it sold for specie. There can be no doubt that where parties have jointly, in the pursuit of an illegal purpose, acquired money and have invested that money in property which is in the possession of one of the joint owners, such possessor can not resist the claim of the other on the ground of the illegality of the business in which the money was first acquired; it was not necessary for plaintiff to prove the partnership because the cotton was bought for the firm, not in the course of the unlawful business. That case was rightly disposed of, and the opinion, when applied to the facts, is not objectionable in the propositions that it lays down, but it wholly fails to sustain the plaintiff's contention in this case.

Brooks v. Martin involved the right of a partner to recover from his copartners under the following state of facts: Martin, Brooks, and Field entered into a copartnership contract whereby Martin agreed to furnish the money and the other two agreed to transact the business of the partnership which was then formed for the purpose of buying the claims of soldiers for lands before warrants were issued. The purchase of such claims from soldiers was prohibited by an act of Congress, and the Supreme Court of the United States held the partnership to be illegal. Brooks and Field bought up a large number of claims from the soldiers as they passed through New Orleans on their return from Mexico to their homes in the United States, and Martin furnished the money to pay for them, amounting to about $50,000. It was then agreed that Brooks should go to Washington City and secure the warrants, which he did, and that Field should go to the northwest and look for suitable locations. The claims bought from the soldiers were converted into warrants issued by the government and regularly transferred to the firm, and by that firm had been sold and converted into money or located upon land and the title procured. Some of the land had been sold for cash and some had been sold upon time with mortgages to secure purchase money. Martin failed in business, and, knowing nothing of the condition of the partnership business in the lands, met Brooks, who represented to him that the business was in a very bad condition, and purchased Martin's interest for about $3000. Martin sued to set aside his conveyance of his interest in the assets of the firm and to recover what was properly due to him, to which suit Brooks pleaded the illegality of the partnership by which the

purchase of the original claims of the soldiers was made. The Supreme Court of the United States, speaking by Justice Miller, said: "When the bill in the present case was filed, all the claims of the soldiers thus illegally purchased by the partnership with money advanced by the complainant had been converted into land warrants and all the warrants had been sold or located. The original defect in the purchase had, in many cases, been cured by the assignment of the warrant by the soldier after its issue. A large portion of the lands so located had also been sold, and the money paid for some of it and notes and mortgages given for the remainder. There were then in the hands of defendants, lands, money, notes, and mortgages, the results of the partnership business, the original capital for which plaintiff had advanced. It is to have an account·of these funds and a division of these proceeds that the bill is filed. Does it lie in the mouth of the partner who has by fraudulent means obtained possession and control of all these funds, to refuse to do equity to his other partners because of the wrong originally done or intended to the soldier? It is difficult to perceive how the statute enacted for the benefit of the soldier is to be rendered any more effective by leaving all this in the hands of Brooks, instead of requiring him to execute justice as between himself and his partners, or what rule of public morals will be weakened by compelling him to do so? The title to the land is not rendered void by the statute. It interposes no obstacle to the collection of the notes and mortgages. The transactions which were illegal have become accomplished facts and can not be affected by any action of the court in this case." The conclusion of the court in the above cited case is not expressed in definite terms, but, taking into consideration the facts stated as the premises from which to draw the conclusion, it could rest upon no other ground than that the funds derived from the transactions, which were illegal, had been realized and invested in other property, for which one of the partners could maintain an action against his copartners without resorting to the terms of the illegal partnership. Any other view of the case would place it in direct conflict with the decision made by the same court in Bartle v. Nutt, 4 Peters, 185. We do not think that Martin v. Brooks sustains the contention of the defendant in error in this case.

In the case of De Leon v. Trevino, 49 Texas, 88, the plaintiff sued to recover of the defendant upon notes executed by the latter, to which the defense was interposed that the notes sued upon were given in settlement of the transactions of the partnership, which was formed for an illegal purpose. Judge Moore, for the court, delivered an opinion in which the case of Martin v. Brooks was carefully reviewed, and announced the conclusion that although the claim for which the note was given could not have been enforced if the partnership was illegal, yet, when the parties made a settlement of the illegal transactions among themselves and executed notes, the illegal character of the transaction did not attach to the notes and the defense set up could not prevail.

The answer of the defendant Wiggins, as amended by the trial amendment, alleged facts which, if true, would constitute a good defense to the plaintiff's action for an accounting of the affairs of the partnership between the plaintiff and the defendant; the District Court erred in sustaining the demurrer to the answer, and the Court of Civil Appeals erred in affirming that judgment. It is therefore ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed and this case be remanded for further trial.

*Reversed and remanded.*