## HALL v. EDWARDS. (No. 1152.)

(Court of Civil Appeals of Texas. Amarillo.
April 11, 1917. Rehearing Denied
May 2, 1917.)

1. VENDOR AND PURCHASER ⬬44—VALIDITY
OF CONTRACT—IMMORAL CONSIDERATION —
SUFFICIENCY OF EVIDENCE.

Evidence showing that defendant's grantors,
owning lots in sections devoted to houses of
prostitution, constructed and sold houses to persons likely to use them for immoral purposes,
terms of sale being so arranged that payments
might be made out of the profits of such business, held sufficient to show that the sale was
for immoral purposes.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 69–76.]

2. CONTRACTS ⬬138(1)—ENFORCEMENT OF ILLEGAL CONTRACT.

Courts will not assist in the furtherance of
an illegal contract, and it is immaterial that the
illegality does not appear upon the face of the
contract; but evidence of the true consideration
and purposes of the contract will be admitted.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. § 681.]

3. CONTRACTS ⬬138(2)—EFFECT OF ILLEGALITY.

Where an illegal contract has been fully
executed by the parties, the courts will recognize
the rights and titles resulting therefrom, where
the suit is not to enforce the contract itself.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 686, 687, 689.]

⬬For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

4. VENDOR AND PURCHASER ⬅⟹39 — ILLEGAL CONTRACT — EFFECT ON SUBSEQUENT TRANSACTION.

Where defendant purchased property for immoral purposes, sale on foreclosure of trust deed, given by her to secure purchase price, was not an independent transaction founded on a new consideration, so as to make the sale valid; it being necessary to exhibit the deed of trust to effectuate the trustee's deed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 9.]

5. VENDOR AND PURCHASER ⬅⟹157—DELIVERY —EFFECT.

Delivery of a deed is a symbolical delivery of possession of the property conveyed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 314–317.]

6. TRESPASS TO TRY TITLE ⬅⟹6(1)—DEFENSE OF ILLEGALITY.

Where property was conveyed through a third person to defendant for immoral purposes, and plaintiff purchased same at foreclosure of trust deed given for purchase price, the court will not grant plaintiff relief in trespass to try title; and the fact that defendant assumed indebtedness does not estop her from denying illegality thereof, she being in fact the true party to the transaction, and the contract·never having been valid.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 5–7, 9, 15, 16.]

Appeal from District Court, Wichita County; E. W. Nicholson, Judge.

Suit by W. M. Hall against Lula Edwards. Judgment for plaintiff, and defendant appeals. Reformed and affirmed.

Nelson & Hunter, of Wichita Falls, for appellant. T. R. Boone, of Wichita Falls, for appellee.

BOYCE, J. Appellant, W. M. Hall, brought suit in trespass to try title to certain property situated in Wichita Falls, against appellee, Lula Edwards, who defended on the ground that appellant acquired his title through and in consummation of a transaction by which the land had been conveyed to appellee for the purpose of conducting thereon an immoral business.

The evidence shows that P. H. Pennington and Chas. Hill on August 20, 1913, conveyed the property in question, which consisted of a lot of ground 49 by 65 feet, on which was situated a seven-room house, to Everett Hughes for a consideration of $150 cash and 56 notes for $60 each and one note for $37, payable monthly, secured by vendor's lien retained in the deed and by deed of trust of even date with the deed. On August 21st Hughes conveyed to Lula Edwards, in consideration of $150 cash and assumption of payment of the notes above described. The first 13 of the notes were paid, and, default having been made in payment of all notes subsequently maturing, the trustee sold the property under the trust deed. The property at the sale was bought in by the appellant, Hall, and the trustee delivered to him proper deed of conveyance therefor.

The jury, in response to special issues sub-mitted to them, found specifically: (1) That Pennington and Hill sold the property to be used for immoral purposes. (2) That it was used for immoral purposes. (3) That appellant, when he purchased the property at the trustee's sale, knew that it had been sold by Pennington and Hill for immoral purposes, and was then being used for such purposes.

[1] We think the evidence is sufficient to support the findings of the jury, and as the appellant challenges only the first finding as above stated, we will notice only briefly some of the facts which support this finding. The said Pennington and Hill owned a lot and fractional part of a lot located in that part of the city of Wichita Falls occupied by houses of ill fame. They built four houses, including the one in question, on this parcel of land, and sold them to persons engaged in the business of conducting houses of prostitution; the sales being made on a small cash payment, with balance in monthly payments, as in the present instance. They evidently were familiar with the character of business being conducted in the vicinity of these houses, and knew the avocation of the parties to whom they sold the property, and it is a fair conclusion from these facts, in connection with the verdict of the jury, to say that they built the houses to be used as houses of prostitution and for sale to those engaged in that business; the terms of sale being so arranged that the payments might be made out of the profits of the business being conducted on the respective premises.

The proposition advanced by appellant as to property that is sold with mere knowledge on the part of the vendor that the vendee expects to use it to carry out an illegal or immoral purpose is generally correct; but we think the facts in this case go further than this. The facts and circumstances of the building and sale of the houses are such as that it may be said that the vendors were to a certain extent aiding and abetting the vendees in carrying on this business to their mutual profit. The facts leading to this conclusion, we think, are equally as strong as those in the case of Reed v. Brewer, 90 Tex. 144, 37 S. W. 418, upon which the Supreme Court denied recovery for the purchase price of furniture sold for use in a house of prostitution. And we conclude that there could have been no recovery by Hill and Pennington on the notes and foreclosure of the lien in a suit brought by them for that purpose.

[2] Appellant on the trial made a prima facie case by the introduction in evidence of the deeds, deed of trust, and trustee's deed above mentioned; and it is urged that, as he was thus enabled to make out his case without in any way referring to or showing the facts that made the transaction illegal,

he was entitled to recover. The proposition, as broadly stated by appellant, is not correct. If the purpose of the suit is to carry out or aid in the consummation of an illegal contract, the fact that the illegality of the transaction may not appear from the face of the contract itself is not material; but evidence of the true consideration and purpose of the contract will be admitted, no matter which party under the rules of pleading and evidence may be forced to show them, and if from all the facts it appears that the transaction is illegal, the court will decline to assist by its judgment in its furtherance. Pomeroy, Equity Jurisprudence (4th Ed.) §§ 938–940; McMullen v. Hoffman, 174 U. S. 640, 19 Sup. Ct. 839, 43 L. Ed. 1123; Wiggins v. Bisso, 92 Tex. 219, 47 S. W. 637, 71 Am. St. Rep. 837; Read v. Smith, 60 Tex. 382.

"The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract. In cases of this kind the maxim is 'Potior est conditio defendentis.' Upon the point as to the ability of the plaintiff to make out his cause of action without referring to the illegal contract, it may be stated that the plaintiff for such purpose cannot refer to one portion only of the contract upon which he proposes to found his right of action, but that the whole of the contract must come in, although the portion upon which he founds his cause of action may be legal. * * * Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case." McMullen v. Hoffman, supra.

"If the transaction is illegal, no expression of it in innocent forms makes it innocent or meritorious. Such disguises may increase the difficulty of detection; but, if exposed, they do not deceive the majority of the courts into treating the transaction as if it was what it would appear to be, and not what it really is." Wegner v. Biering, 65 Tex. 510.

[3] When, however, the illegal contract has been fully executed by the acts of the parties themselves, and the suit is not brought for the purpose of enforcing the contract itself, the courts will recognize the rights and titles resulting from the execution of the contract by the parties themselves. Wegner v. Biering, 65 Tex. 511; McBlair v. Gibbes, 17 How. 232, 15 L. Ed. 133; Pomeroy, Equity Jurisprudence, § 939. For instance, if Lula Edwards had paid the balance of the consideration, the courts in any future litigation as to the title would recognize this conveyance as a good link in the chain of title; for, as Judge Robertson in the case of Wegner v. Biering, supra, says:

"When the contract has been executed without the aid of courts by the voluntary acts of the parties, the profit or estate realized is not contaminated."

And even where there is some connection between a new contract, which is sought to be enforced, and an illegal one, yet in some cases the courts will enforce such new contract. Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787; De Leon v. Trevino, 49 Tex. 88, 30 Am. Rep. 101; Brooks v. Martin, 2 Wall. 70, 17 L. Ed. 732. In the case of Floyd v. Patterson, supra, it was held that a broker, who had received the proceeds of a gambling transaction for the benefit of his principal, might be compelled to pay it to his principal; the suit being on the implied promise to pay. The court in the decision of the case says:

"But if the transaction has been completed, and another grows out of it collateral to it, dependent upon a new consideration, the new contract is not vitiated by the taint of the old one, and will be enforced. 'It has been observed that the test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case.'"

In the case of De Leon v. Trevino, supra, a partnership had been engaged in an illegal business, and on settlement of the partnership affairs one partner gave the other a note for the balance due him on such settlement, and the court granted a recovery thereon. The case of Brooks v. Martin also permits the enforcement of rights growing out of a partnership engaged in an illegal business, which had been consummated. We do not deem a further reference to authorities along this line necessary. An extended review of such authorities was made by our Supreme Court in the case of Wiggins v. Bisso, 92 Tex. 219, 47 S. W. 637, 71 Am. St. Rep. 837, and by the Supreme Court of the United States in the case of McMullen v. Hoffman, 174 U. S. 640, 19 Sup. Ct. 839, 43 L. Ed. 1117. The force of the cases of De Leon v. Trevino and Brooks v. Martin as controlling authorities is very much weakened by the decisions in the two last-named cases. The consideration of the principles announced by these authorities in their possible application to the facts of this case has raised considerable doubt as to the proper decision thereof. By the trustee's sale under the terms of the deed of trust the legal title to the property was vested in the plaintiff without the aid of the courts, and the questions suggested by these authorities are: (1) Whether the contract has thus been fully executed and the present suit can be regarded as one to carry out or enforce the illegal contract; (2) whether the trustee's deed under which plaintiff claims is such an independent contract founded on a new consideration as to come within the rule quoted from Floyd v. Patterson, supra.

[4] Reversing the order of these questions in our further consideration of them, we may say that if the defendant, Lula Edwards, in satisfaction of the balance due on the notes, had voluntarily deeded the land to Hall without giving possession, the case would seem to come fairly within the authority of the case of De Leon v. Trevino. The trustee's deed executed under the au-

thority of the deed of trust is in legal effect a conveyance by Lula Edwards herself. However, its connection with the illegal contract is more close than if it were an independent deed executed by her. It takes its life from its rooting in the illegal contract evidenced by the deed and deed of trust. It is necessary to exhibit the deed of trust to give any effect whatever to the trustee's deed. We think that our answer to this question should be adverse to appellant's claim.

[5] On the other question suggested the authorities are conflicting. If possession of the property had been delivered to appellant upon execution of the trustee's deed, there can be no doubt that the contract would have been executed and the courts would thereafter recognize the title and rights thus acquired. Delivery of a deed is a symbolical delivery of possession of the property conveyed. Thus the ultimate question here is whether it takes the physical possession of the property to finally and fully consummate the contract, and whether, when the appellant enters the courts to obtain such possession, he is invoking the aid of the court in carrying to final effect the illegal contract. In discussing the maxims which control the action of the courts in these cases, to wit, "Ex turpi causa non oritur actis," and "In pari delicto melior est conditio possidentis," Pomeroy says:

"The 'condition' referred to in the maxim is clearly the condition of the parties with respect to their property rights created by or resulting from the contract."

And Judge Denman, in the case of Beer v. Landman, 88 Tex. 450, 31 S. W. 807, treats the "word 'condition' as referring to vested property rights." In the cases of Raguet v. Roll, 7 Ohio, 70, pt. 2, and Williams v. Englebrecht, 37 Ohio St. 385, it was held that a mortgagee in a mortgage given to secure the payment of an indebtedness founded on an illegal consideration, where the mortgagor remained in possession, could after default maintain an action of ejectment on the legal title thus vested in the mortgagee, though he had been denied recovery on the notes and foreclosure of lien on suit thereon. Where conveyances have been made to defraud creditors, and possession remains with the grantor, some courts allow the grantor to recover, and others deny recovery. Elliott on Contracts, 622. Among the cases that recognize the right to recover are the following: Epperson v. Young, 8 Tex. 135; Hoeser v. Kreaka, 29 Tex. 450; Lemp Brewing Co. v. La Rose, 20 Tex. Civ. App. 575, 50 S. W. 462; Elmore v. Elmore (Ky.) 58 S. W. 980. Contra: Kirkpatrick v. Clark, 132 Ill. 342, 24 N. E. 71, 8 L. R. A. 511, 22 Am. St. Rep. 531, and authorities there cited. In the case of Medearis v. Granberry, 38 Tex. Civ. App. 187, 84 S. W. 1070, a deed had been executed and delivered on an illegal consideration, and the grantee sued the grantor, who had remained in possession. It was held in effect that the contract was not complete without possession of the property, and, as the purpose of the suit was to seek the aid of the court to consummate the illegal contract, recovery should be denied. This case is more in point on the question than any we have examined, and while, as Judge Key says in the opinion of the court, "the question is not free from difficulty" we have decided to follow it in our decision of the question.

[6] The property was conveyed to Everett Hughes, who conveyed to Lula Edwards, as heretofore stated, and appellant asserts that appellee, Lula Edwards, by reason of the assumption of the payment of the indebtedness in the deed to her, is estopped from denying the legality of the notes and the lien securing their payment, and cites the following cases in support of his contention: Michigan Savings & Loan Association v. Attebery, 16 Tex. Civ. App. 222, 42 S. W. 569; Paddock v. Loan Association, 13 Tex. Civ. App. 514, 36 S. W. 1008. The evidence tends to show that Lula Edwards applied in person to Chas. Hill to purchase the property, and he informed her that they could not sell it to her direct; that she thereupon bought the property through Everett Hughes, paying the entire consideration therefor herself; that Pennington and Hill did not know Everett Hughes, and did not look to him for payment of the notes. These facts and others would warrant the court below in finding that the sale to Everett Hughes was only a sham, and that the real transaction was a sale to Lula Edwards. We do not think, however, that such a conclusion is necessary to support the judgment. The cases cited do not appear to us to be authority for appellant's position. In those cases the indebtedness itself was a valid obligation against the party selling the land against which it was supposed to constitute a lien. The lien was only unenforceable originally because not obtained in compliance with the law fixing the manner in which liens might be acquired upon the homestead, etc. The property was conveyed subject to such lien, and the amount of the indebtedness secured thereby was deducted from the consideration paid the grantor. In such case, to permit the party who had bought the land to defeat the lien, thus leaving the vendor liable to pay the notes, which according to their understanding were to have been paid out of the property, would be manifestly unjust, and he was held estopped from denying the validity of the lien. No such considerations enter into this case. The indebtedness is not legal, and could not be enforced against Hughes; and, even if it could, he is in no position to invoke a doctrine of equity to protect him from loss in the transaction. We do not think the contract could be purified in this way. Seeligson v. Lewis, 65 Tex. 220, 57 Am. Rep. 593; Wegner v. Biering, 65 Tex. 510.

These conclusions result in our overruling

the first four assignments of error presented by appellant.

The court below not only entered judgment that plaintiff take nothing by the suit, but also rendered judgment for the defendant, removing cloud from her title, etc. The judgment of the court in such cases should leave the parties in the same condition "as they have by their own acts placed themselves." Eckles v. Nowlin, 158 S. W. 795; Beer v. Landman, 88 Tex. 450, 31 S. W. 805. In the case of Kirkpatrick v. Clark, 132 Ill. 342, 24 N. E. 71, 8 L. R. A. 514, 22 Am. St. Rep. 531, where the vendor in a fraudulent conveyance had remained in possession and suit was brought by the grantee, the court said:

"In the present case, if the facts are as the evidence offered would tend to show, the fraudulent transaction has been consummated to the extent of vesting the title in the plaintiff, and leaving the possession in the defendant. Here, according to the rules of law above discussed, they should be left."

In order that there may be no doubt as to the effect of the judgment, it will be reformed, so as to carry out this purpose, and affirmed.