1020

## MASSACHUSETTS BONDING & INS. CO. v. GOTTLIEB et al. (No. 963—5094.)

Commission of Appeals of Texas, Section B.
April 10, 1929.

Burgess, Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for plaintiff in error.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, for defendants in error.

LEDDY, J. We adopt the following statement of the case from the opinion of the Court of Civil Appeals [1 S.W.(2d) 431]:

"The Emgee Sales Company, a partnership composed of appellees, employed Max Gruber, Jr., as a salesman to sell goods in Louisiana. Appellant became surety for Gruber upon a fidelity bond in the sum of $1,000, agreeing to indemnify the appellees against any pecuniary loss which they might sustain of money or other personal porperty belonging to appellees by any act of larceny or embezzlement on the part of Gruber while in the performance of his duties as such salesman.

"Gruber's duties were to take orders for the goods, deliver same, and, at the expiration of 45 days, collect the purchase price and remit same to appellees. At the expiration of the 45 days, Gruber was to take back from the customers all unsold articles allowing credit therefor. These returned articles it was Gruber's duty to return to appellees in Dallas or sell to other customers. He was to be paid a commission upon his sales with a guaranty of $35 per week which was later increased to $40 per week. He worked about six weeks, when his employment ended. At the time he had collected certain monies and had on hand certain merchandise, for all of which he failed to account to his employers, who brought this suit against appellant, setting up that Gruber had embezzled said money and converted said goods to his own use.

"Gruber was not sued; it being alleged and proven that he was notoriously insolvent.

"The goods which Gruber was employed to sell were sets of merchandise, consisting of watches, pipes, pistols, razors, cigarettes, and many other articles. In the sets were $10 gold pieces and dollar bills. It was contemplated and intended by appellees that their customers should dispose of these articles by what in effect was a lottery operated by punch boards which accompanied the sets."

The Court of Civil Appeals affirmed the judgment of the trial court, which awarded defendants in error recovery against the surety on the fidelity bond for the amount of money and property shown to have been unlawfully appropriated by Max Gruber, Jr., which it was his duty, under the contract of employment, to turn over to his employer.

The contract between Gruber and his employer contemplated the sale of paraphernalia for the establishment and maintenance of a lottery in violation of the laws of this state and of the state of Louisiana, where the contract was to be performed; hence was clearly illegal and void. Article 654, Texas Penal Code (1925); Louisiana Act 25 of 1892, p. 53, § 3; State v. Randle, 41 Tex. 292; Prendergast v. State, 41 Tex. Cr. R. 358, 57 S. W. 850; Crutchfield v. Rambo, 38 Tex. Civ. App. 579, 86 S. W. 950; Hafale v. Canfield Manf. Co. (Tex. Civ. App.) 268 S. W. 986.

Defendants in error insist that a recovery on the bond is justified because the illegal contract was merely incidentally or collaterally connected with the transaction, and that they required no aid from the illegal contract to establish their cause of action.

If defendants in error require any aid from the illegal contract to establish their case, they should not be permitted to recover. Wiggins v. Bisso, 92 Tex. 219, 47 S. W. 637, 71 Am. St. Rep. 837; Reed v. Brewer, 90 Tex. 144, 37 S. W. 418; Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787; Houts v. Scharbauer (Tex. Civ. App.) 103 S. W. 684; Read v. Smith, 60 Tex. 379.

To hold otherwise would place the courts in the unenviable position of enforcing the provisions of an unlawful contract. Wiggins v. Bisso, supra; Lemon v. Grosskoph, 22 Wis. 447, 99 Am. Dec. 58; Hunt v. Knickerbacker, 5 Johns. (N. Y.) 327; Murdock v. Kilbourn, 6 Wis. 468.

There are a number of cases sustaining the right of the principal to recover from his agent the proceeds from an unlawful enterprise which has been completed. Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am.

St. Rep. 787; Heidenheimer v. Beer (Tex. Civ. App.) 155 S. W. 352; De Leon v. Trevino, 49 Tex. 88, 30 Am. Rep. 101; Pfeuffer v. Maltby, 54 Tex. 454, 38 Am. Rep. 631; Wegner Bros. v. Biering & Co., 65 Tex. 506. In all of these cases, however, it will be found that the recovery of the proceeds of an illegal transaction was sustained, not on the theory that any part of the illegal contract was enforceable, but on the implied contract which is held to arise where one person has money or property belonging to another to deliver the same to its rightful owner. A recovery on such ground requires no aid whatever from the illegal contract.

Defendants in error attempt to bring their case under the rule announced in these cases on the theory that the unlawful contract between the agent and the customer for the sale of the lottery devices had been completed, and such agent merely held the proceeds derived from an unlawful contract which the principal was entitled to recover. We think this view misconceives the basis for the liability assumed by the surety on the fidelity bond. Such liability does not arise from the contract between the agent and the customer. The bond was executed for the purpose of insuring the partial performance of the contract *between the employer and his employé.* This contract involved two propositions, first, that the employé would sell and dispose of lottery devices, and, second, that he would turn over the proceeds thereof to his employer. The contract was void in its entirety; hence no action could be predicated thereon.

Even if it be assumed that the employer in this case would be entitled to obtain a judgment against his employé, Max Gruber, Jr., the principal in the fidelity bond, it does not follow that a recovery against the surety on such bond is justified. The recovery under such circumstances by the employer against the employé is not in affirmance of the contract, but is based solely upon the promise raised by legal implication that a person having property in his possession belonging to another should deliver the same to its lawful owner. A recovery against the surety on the bond cannot be sustained on any such theory, for the reason that the terms of the bond limit the recovery to loss through theft or embezzlement of money or property coming into the hands of the employé by virtue of the illegal contract.

If the employé in this case had come into possession of money or property belonging to his employer from some enterprise wholly disconnected with the duties of his employment, and had embezzled the same, he would be liable to his employer for the amount thereof, but the employer could not recover against the surety on the fidelity bond, as such loss would not be within the terms of the bond.

It will thus be seen that defendants in error must necessarily receive aid from the illegal contract in order to establish a right to recover against the surety on such bond. Proof merely that their employé had certain money in his possession belonging to them which he converted to his own use would not have been sufficient to have authorized a judgment to be entered against the surety on the fidelity bond. Defendants in error would have been required to go further and show that such money or property came into his possession by virtue of his employment. It is undisputed that the contract of employment in this case was limited solely to selling lottery devices, collecting the proceeds thereof, and turning the same over to the employer.

We are unwilling to sanction the doctrine that a person, knowingly engaging in an unlawful enterprise, may secure himself against loss occasioned by the act of his agent in carrying out any part of such illegal undertaking. If such were the rule, one engaged in commercialized vice might legally protect himself from loss by requiring his agents to give surety bonds conditioned that they would turn over to him the proceeds of such criminal enterprise. Enforcement of such bonds would, as stated by Chief Justice Church in Woodworth v. Bennett, 43 N. Y. 277, 3 Am. Rep. 706, give judicial sanction to the sentiment of "honor among thieves."

A recovery against the surety cannot be sustained on the theory that it in effect guarantees a legal portion of the contract between the employer and his employé. It is true a recovery on a surety bond may be upheld, where it guarantees the performance of a legal portion of an unlawful contract, provided such legal provision is enforceable as being separable and disconnected from the unlawful portion. In this case the entire contract upon which the bond is based is illegal, because, if the illegal portion in which the agent agrees to sell lottery devices falls, there can be no proceeds to turn over to his principal. The contract is not severable, but is wholly void.

We think it clear that the effect of the surety bond in this case is to secure the partial performance of a contract tainted with illegality. While the bond does not guarantee that the agent will sell any lottery devices, it does insure the employer that, after such devices are disposed of, the agent will not appropriate the proceeds thereof to his own use. The contract is only complete when the agent has properly accounted for the money or property coming into his hands under his contract of employment. It was intended, and, if valid, is an effective means, to secure the faithful performance of this portion of the contract. Proof of the illegal contract is therefore an essential part of the cause of action asserted against the surety.

The transaction between the primary parties, out of which the agreement for surety-

ship arises, being contaminated by positive illegalities of which the surety is not shown to have had knowledge, the agreement of the surety is not binding. Bank v. Clark's Estate, 59 Colo. 455, 149 P. 612; Denison v. Gibson, 24 Mich. 187; Daniels v. Barney, 22 Ind. 207; Barney v. Daniels, 32 Ind. 19; Mound v. Barker, 71 Vt. 253, 44 A. 346, 76 Am. St. Rep. 767; Riley v. Jordan, 122 Mass. 231.

We recommend that the judgment of the trial court and the Court of Civil Appeals be reversed, and judgment rendered in favor of plaintiff in error.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.