**GRAHAM v. DEAN et al.**

No. 5662.

Court of Civil Appeals of Texas. Amarillo.
Jan. 15, 1945.

Rehearing Denied March 5, 1945.
Certified Question Answered May 16, 1945.

Hay & Hudspeth, of Lubbock, for appellant.

Bean, Evans & Croslin, of Lubbock, for appellees.

HEARE, Justice.

This is a suit by the appellees to recover for property damage to a heavy cotton conditioner machine occasioned by the machine being dropped while it was being unloaded from a truck operated by appellant's employee.

The appellant verbally agreed with the appellees to haul the machine, the property of the appellees, from Dallas, Texas, to Spade, Texas, for a consideration of seventy-five dollars. The only authority held by the appellant for transporting commodities over the highways of Texas for hire was that of a "specialized motor carrier" as defined and authorized by Article 911b, as amended in 1941, Vernon's Ann.Civ.St. This authority was limited to the transportation of household goods, used office furniture and equipment, livestock and livestock feedstuff, farm machinery, wool, mohair, grain, and oil field equipment, and, except as to household goods and used office furniture and equipment, was limited in territory to that part of Texas situated west of State Highway No. 2 from Ringgold to San Antonio and west of State Highway No. 16 from San Antonio to Aransas Pass. Dallas is situated east of those highways, and Spade, Texas is situated near Lubbock in the western part of the State. In short, the appellant had no legal authority, either as to the commodity or as to the territory, to transport the cotton conditioner for hire over the public highways of Texas from Dallas to Spade.

The cotton conditioner machine was purchased by the appellees in Dallas and, under an arrangement with the appellees, the appellant sent his truck and driver to Dallas, where the machine was loaded and hauled to Spade for use in a cotton gin owned and operated by the appellees. Upon arriving at his destination, the truck driver enlisted the aid of some local men to help him unload the heavy machine. He had no power winch but by the use of hydraulic jacks and roller pipes moved the machine back on the truck bed until one end of it was lowered to the ground. The weight of the machine caused the truck to roll forward and the other end of the machine dropped to the ground a distance of about four feet, resulting in a bent main shaft and other damage to the conditioner. The appellees had no part in the unloading of the machine. They found it necessary to return the machine to Dallas for repair and the amount of the damage was established at $595.77.

In the trial of the case before the court without a jury, the appellees prevailed for the amount of their damage. At the request of the appellant, the trial court made and filed findings of fact and conclusions of law. Among them were the fact findings (a) that appellant was not authorized to haul the cotton conditioner machine and was operating in violation of the law in hauling such machine, and (b) that appellant's driver was negligent in the manner in which he unloaded the cotton conditioner and that such negligence was the proximate cause of the damage. In its legal conclusions, the trial court held that the appellant was a bailee for hire and was liable to the bailor (appellees) for his negligence which proximately caused the damage to the cotton conditioner and that he was not relieved of such liability by reason of the illegality of the contract for the haul.

In an able and exhaustive brief, the appellant challenges the correctness of the judgment on the points that the illegal contract placed both parties in pari delicto and therefore precluded recovery by the appellees; that to permit recovery under the facts and circumstances of the case would contravene the declared legislative intent and policy as applied to this type of transportation; that the court should have determined the appellant to be a common carrier as a matter of law, thereby precluding as immaterial the questions of negligence and proximate cause; that, regardless of whether the suit was predicated on a contract of transportation or on the implied contract of bailment incident thereto, the illegality of the purpose vitiated either or both and no recovery should be allowed, because of the illegal purpose motivating the entire transaction. By "alternative points," appellant insists that if proximate cause is a material inquiry, then as a matter of law the illegality of the contract was a proximate cause of the damage; that if the question of negligence is pertinent to the issues of the case, then the court's finding of negligence lacked support in the evidence. A discussion and determination of the case as a whole will, in our opinion, dispose of all points presented in the brief.

 The appellant was a common carrier only in a limited capacity. He was under no obligation to haul for the public generally any commodity not listed in his "specialized motor carrier" certificate, nor was he under any obligation to haul any of those commodities so listed to or from beyond the territories prescribed in his certificate of authority. He was, in fact, just as the name indicates, a "specialized" carrier restricted by law both as to commodity and as to territory. The fact that the appellant was a common carrier in the limited sense, as outlined, would not in itself preclude him

694

from acting as a private carrier or bailee for hire in hauling some commodity which it was not his business to carry under his certificate as a specialized motor carrier. The record shows that the appellant had done other hauling for the appellees, hauling which was not authorized by his certificate of authority, but there is no showing that the appellant held himself out to the public generally, or to the appellees in particular, to be a common carrier in its broader sense, with Railroad Commission authority to haul the actually prohibited commodities.

The rule, as stated in 9 Am.Jur. 436, Sec. 12, and 13 C.J.S., Carriers, p. 32, § 5, is settled, that a common carrier may undoubtedly become a private carrier or a bailee for hire and when, as a matter of accommodation or special engagement, he undertakes to carry something which it is not his business to carry, he becomes a private carrier for that occasion. We must conclude, therefore, that as to the transaction in question, the relationship between the parties was not that of shipper and common carrier but rather that of private carrier or bailee for hire. 13 C.J.S., Carriers, p. 31, § 4. Because the appellant had no legal authority to act as a common carrier in the transportation of the cotton conditioner machine, the appellees would be denied the more favorable legal protection and rights accorded to a shipper who engages the services of a common carrier. The rights, duties, and obligations of the parties to a shipper-common carrier relationship are different from the rights, duties, and obligations of the parties to a private carrier or bailment for hire arrangement. 13 C.J.S., Carriers, p. 138, § 74.

In the instant case the agreement by which the appellant became a bailee for hire was an illegal one. Article 1690b, as amended in 1931, Vernon's Annotated Texas Penal Code. It was so found by the trial court. Even so, in the course of his carrying out the agreement, the bailee owed the bailor certain duties. One of those duties was to use ordinary care in the keeping and handling of the appellees' property which came into his possession. This duty or obligation arose by reason of the fact that he had in his possession the property of another, even though it came into his possession as an outgrowth of an illegal arrangement. The violation of this duty would not be a mere breach of contract but would sound in tort and for a dereliction of this duty the injured obligee may recover. The damage arises not from a breach of contractual covenant, but from a tortious act predicated on the possession of another's property.

The appellant urges that because of the illegality of the contract between him and the appellees, his possession of the appellees' property was illegal and, therefore, a court will not recognize or enforce the duty which he would otherwise owe the appellees to use ordinary care in the handling of their property. This contention is not sustained by the authorities. Based upon these authorities, the rule is stated by leading text writers: "As in the case of ordinary contract, a contract of bailment, to be valid and enforceable as between the parties, must not be in violation of law or based upon an illegal or fraudulent transaction, but if property has been turned over to the bailee in conformity with such an agreement, the illegality of the contract does not work a forfeiture thereof or make the party who received the property any less a bailee under obligation to return the thing bailed in good condition. Under such circumstances the obligation may be regarded as one imposed by law, springing out of the fact of possession of another's property, and its violation sounds in tort or in quasi contract upon a contract implied in law, and not upon the illegal transaction between the parties." 6 Am.Jur. 207, Sec. 82.

"The bailee may not be relieved from his duty to take proper care of the article bailed by the fact that it is bailed for an unlawful purpose." 8 C.J.S., Bailments, p. 273, § 27.

In 34 A.L.R. 762, is found an annotation on the liability of a bailee for conversion or negligence as affected by the Sunday law. Part of the quotation therein cited from Frost v. Plumb, 40 Conn. 111, 16 Am.Rep. 18, is here repeated for the benefit of the language therein employed:

" 'On the whole we regard the cases cited above as authorities for holding that a party who hires and drives a horse upon the Sabbath, and, while so driving it, causes its death, either wilfully or negligently, is liable to the owner in an action of trover. We think, also, that the law thus stated can be fully vindicated upon principle. The plaintiff, in making a contract prohibited by law, exposed himself to all its legitimate consequences. He is not only liable to the pen-

alty, but the law will refuse to aid him in enforcing it, or in recovering compensation for a breach of it, and will not allow him to recover in any action which essentially depends upon it. But it does not, in a case like this, deprive the owner of his general property in the horse, nor place him, or his property, outside of the protection of the law. Nor will it in any sense operate to justify or excuse the other party in the commission of any wrongful act not contemplated by the agreement.'"

In Cooley on Torts, Third Edition, Page 273, it is stated:

"We are unable to discover, on principle, any sound reason for holding that plaintiff should be deprived of the usual remedy given him by law for the injury sustained by the negligent act of another, because he and the other person were both violating the law, when it is clear that the violation of the law has no causative connection with the injury complained of, and plaintiff in no way contributed to the injury of which he complains."

The precise point was before this Court in the case of Huie v. Lay, 170 S.W.2d 823. Cotton which was being transported in violation of the law was destroyed by fire. The parties admitted that only the relationship of private carrier existed. It was therein specifically stated that such a carrier could not, as a matter of law, escape liability for his own negligence on the ground that the contract of shipment was illegal.

■ The appellant urges that the illegal contract was, as a matter of law, the proximate cause of the injury to the property. He argues that it was the intent and policy of the 47th Legislature, in amending the special commodity carrier law, to provide for and require adequate equipment in the handling of certain types of heavy and bulky machinery for the protection of the shipping public and to ensure the safe handling of its property. We are not in accord with appellant in the view that the illegal contract between the appellees and the appellant was, as a matter of law, the proximate cause of the damage to the machine. There is no showing that heavy machinery of this type can not ordinarily be handled safely and without damage to it by the use of the equipment employed by the appellant. True, a power winch or traveling crane or some other mechanical device might facilitate the loading or unloading of the machine, but we are inclined to the view that it was not necessarily, or even reasonably, foreseeable by the appellees, in the making of the contract with the appellant, that the machine would probably be dropped and damaged.

■ The evidence amply supports the finding of the trial court that the appellant was guilty of negligence in the unloading of the machine and that such negligence was the proximate cause of its damaged condition. The truck driver testified concerning the method which he used in unloading the heavy conditioner, the sudden rolling forward of the truck, the resulting dropping of the machine for a distance of four feet, and the bending of a pipe sticking out of the end of the conditioner by its being caught on the end of the truck. While the allegations of the appellees concerning the manner of the handling of the machine were general and somewhat meager, yet no exception was taken to the pleadings. It is our opinion that the findings of the trial court on this issue are supported by the pleadings and the proof.

We believe that what we have said disposes of all of the points of error presented by the appellant and adversely to his contentions. The judgment is affirmed.

STOKES, Justice (dissenting on motion for rehearing).

Upon a reconsideration of the entire record in this case, I have reached the conclusion that we erred in affirming the judgment of the trial court, and for the reasons hereinafter stated I respectfully dissent from the judgment affirming the case and from the holdings of the original opinion.

The appellees' petition constitutes an ordinary action for damages which they allege accrued to them by reason of a contract of transportation and the negligence of the appellant in handling and transporting a cotton conditioner, under the contract, from Dallas to Spade in Lamb County. As stated in the original opinion, the appellant was not authorized to transport the conditioner from Dallas to Spade and was operating in violation of the law when he did so. Article 911b, Vernon's Annotated Civil Statutes; Article 1690b, Vernon's Annotated Penal Code. Not only was appellant not authorized to transport the conditioner, but the cited statutes prohibited him from doing so, and the contract entered into between him and appellees was therefore void.

Texas Employers' Ins. Ass'n v. Tabor, Tex. Com.App., 283 S.W. 779; Massachusetts Bonding & Ins. Co. v. Gottlieb, Tex.Com. App., 15 S.W.2d 1020; Seeligson v. Lewis & Williams, 65 Tex. 215, 57 Am.Rep. 593; Rogers v. Traders & General Ins. Co., 135 Tex. 149, 139 S.W.2d 784, 128 A.L.R. 1305; Montgomery Ward & Co. v. Lusk, Tex.Civ. App., 52 S.W.2d 1110; Payne v. Bassett, Tex.Civ.App., 235 S.W. 917. The contract obligated the appellant to do a thing which he could not perform without violating a criminal statute and also the public policy of the State as declared by the Legislature in Section 22b of Article 911b, supra. The law is well established by the above-cited authorities and many others that if a complainant requires any aid from his own illegal contract to establish his case he cannot recover either the consideration provided in the contract or damages for its breach. It seems to have been recognized by the trial judge that appellees could not recover upon the contract of transportation, but he held that they could recover upon the theory that the appellant was a bailee for hire and it was upon that basis that he rendered judgment in their favor, and my associates approve that holding. It is doubtful that appellees could recover under that theory upon their petition, in which they based their case solely upon the contract of transportation. Texas & P. Ry. Co. v. Langsdale, Tex.Civ.App., 30 S.W. 681. However that may be, according to their petition, appellant was to be paid, and was paid, a compensation for the duties which he agreed to perform and if he was a bailee, it was for hire and not gratuitous or merely for accommodation of the bailor. Moreover, the appellees could not charge appellant with ordinary care in the handling of the property bailed to him without establishing the fact that he was a bailee for hire and in order to do this they were put to the necessity of establishing the contract because if appellant was merely a gratuitous bailee or a bailee for the accommodation of appellees, he was liable only for gross negligence in handling the property bailed to him. Gross negligence is defined by our courts to be an entire want of care which would raise a presumption of conscious indifference to consequences. Dallas City R. Co. v. Beeman, 74 Tex. 291, 11 S.W. 1102; Citizens' Nat. Bank of Jasper v. Ratcliff & Lanier, Tex.Com.App., 253 S.W. 253. The petition did not charge appellant with gross negligence, nor did the testimony in the case establish negligence of that degree. Appellees were therefore put to the necessity of alleging, proving, and therefore drawing aid from the illegal contract of transportation, whether appellant be called a carrier or a bailee.

In the original opinion it is correctly stated that the agreement by which the appellant became a bailee for hire was an illegal one under Article 1690b, Vernon's Annotated Penal Code, and it was so found by the trial court. It was held, however, that, even so, in the course of his carrying out the agreement, the bailee owed to the bailor the duty of using ordinary care in keeping and handling the property. It was said that this obligation may be regarded as one imposed by law, springing out of the fact of possession of another's property. As an abstract proposition of law, that holding is correct but, in my opinion, it does not apply to this case, because this is a suit between the parties to the illegal contract. The principle of law applies only in cases where third parties come into possession of money or property by virtue of an illegal contract entered into by others, such as stakeholders of lottery tickets and the like. Matta v. Katsoulas, 192 Wis. 212, 212 N.W. 261, 50 A.L.R. 291.

It seems obvious to me that if the appellees could not recover upon the contract under which the appellant was obligated to transport the machinery from Dallas to Spade because it was an illegal contract, then for the same reason they could not recover upon a contract of bailment because it likewise was illegal and, as I have already stated, they could not recover without drawing aid from it. In either event the same rule of law would apply and, since appellees were not entitled to recover upon any theory of the case and, therefore, nothing could be gained by remanding it for another trial, in my opinion, the motion for rehearing should be granted, the judgment of the court below reversed, and judgment here rendered that appellees take nothing by their suit.